Chad D. Bernard (SBN 194162)
Chad. Bernard@jacksonlewis.com
Eric J. Gitig (SBN 307547)
Eric.Gitig@jacksonlewis.com
Martin Vigodnier (SBN 311834)
Martin.Vigodnier@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendants
ROCKET MORTGAGE, LLC
(formerly known and doing business as
Quicken Loans, Inc. and Quicken Loans, LLC);
and ROCKET COMPANIES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| D C SNYDER, as an individual on behalf of himself and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>ROCKET MORTGAGE, LLC, a Michigan Limited Liability Company; ROCKET COMPANIES, INC., a Delaware Corporation; QUICKEN LOANS, INC., a Michigan Corporation, and QUICKEN LOANS, LLC, a Michigan Limited Liability Company; and DOES 1-100, inclusive,<br><br>        Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1331, 1441, AND 1446 (FEDERAL QUESTION JURISDICTION) AND 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>(Filed concurrently with Notice of Removal; Declaration of Eric J. Gitig; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement)<br><br>Complaint Filed:   April 29, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF D C SNYDER, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant ROCKET MORTGAGE, LLC (formerly known and doing business as QUICKEN LOANS, INC. and QUICKEN LOANS, LLC) ("Defendant" or "Rocket Mortgage"), hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1331, 1332, 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Los Angeles based on federal question jurisdiction and the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant asserts the following:

<u>**SERVICE AND PLEADINGS FILED IN STATE COURT**</u>

1.      On April 29, 2022, Plaintiff D C SNYDER ("Plaintiff") filed an unverified Collective and Class Action Complaint against Rocket Mortgage, Rocket Companies, Inc., Quicken Loans, Inc., and Quicken Loans, LLC (collectively, "Defendants") in the Superior Court of the State of California for the County of Los Angeles, entitled *D C SNYDER vs. ROCKET MORTGAGE, LLC, et al.*, Case No. 22STCV14382, which sets forth the following nine causes of action: (1) recovery of unpaid minimum wages and liquidated damages; (2) recovery of unpaid overtime wages; (3) failure to provide meal periods or compensation in lieu thereof; (4) failure to provide rest periods or compensation in lieu thereof; (5) failure to furnish accurate itemized wage statements; (6) failure to timely pay all wages due upon separation of employment; (7) failure to reimburse business expenses; (8) violations of the Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq*.); and (9) unfair competition (the "Complaint"). As stated in paragraph 14 therein, Plaintiff brought the California state law claims on behalf of himself and a putative class of similarly situated persons consisting of "all current and former non-exempt employees that worked for Defendants in California at any time within the four years prior to the filing of the initial complaint."

---

USDC CASE NUMBER                2                NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

2.      Defendant Rocket Mortgage first received Plaintiff's Summons and Complaint when Rocket Mortgage was served on May 6, 2022.  Declaration of Eric J. Gitig ("Gitig Decl.") at ¶ 2.  True and correct copies of the Summons, Complaint, and other related court documents received by Rocket Mortgage on May 6, 2022 are attached as **Exhibit "A"** to the Gitig Declaration.

3.      On June 1, 2022, Defendant filed and served an Answer to the Complaint in the Los Angeles County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses.  Id. at ¶ 3. A true and correct copy of Defendant's Answer is attached as **Exhibit "B"** to the Gitig Declaration.

4.      According to the proofs of service filed by Plaintiff in the Los Angeles County Superior Court, Defendant Rocket Companies, Inc. was served with Plaintiff's Summons and Complaint on May 9, 2022, and Defendants Quicken Loans, Inc. and Quicken Loans, LLC were served with Plaintiff's Summons and Complaint on May 12, 2022.[1] Id. at ¶ 4. True and correct copies of the Proofs of Service of Summons are attached as **Exhibit "C"** to the Gitig Declaration.

5.      On June 3, 2022, Defendant Rocket Companies, Inc. filed and served an Answer to Plaintiff's Complaint in the Los Angeles County Superior Court. Id. at ¶ 5. A true and correct copy of Defendant Rocket Companies, Inc.'s Answer is attached as **Exhibit "D"** to the Gitig Declaration.

6.      As of the date of this Notice of Removal, **Exhibits "A" through "D"** to the Gitig Declaration constitute all of the pleadings received or filed by Rocket Mortgage in this matter.  Id. at ¶ 6.

## **TIMELINESS OF REMOVAL**

7.      This Notice of Removal has been filed within 30 days after Rocket Mortgage was first served with a copy of Plaintiff's Summons and Complaint on May 6, 2022. Gitig Decl. at

---

[1]      Defendant Rocket Companies, Inc. has consented to this removal. Gitig Decl. at ¶ 8. To the extent consent from Defendants Quicken Loans, Inc. and Quicken Loans, LLC is required, both entities consent to this removal.  Id. at ¶ 9.

| USDC CASE NUMBER | 3 | NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT |

¶ 2. Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## **VENUE IS PROPER**

8.     This action was filed in the Superior Court in and for the County of Los Angeles. Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. Gitig Decl. at ¶ 2, **Exhibit "A"** ["Complaint"] at ¶¶ 1-3.

## **REMOVAL IS PROPER BASED ON FEDERAL QUESTION JURISDICTION**

9.     "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction … may be removed by the defendant … to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

10.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because it involves alleged violations of the laws of the United States. Specifically, the eighth cause of action asserted in the Complaint alleges that Defendants violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq.* Complaint at ¶¶ 115-126. Because Plaintiff alleges violations of the FLSA on the face of his Complaint, and because the FLSA is a federal law, the Complaint presents a "federal question." *See Holmes Grp, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (whether a case "arises under" federal law for original jurisdiction purposes is tested by the "well-pleaded complaint" rule which requires federal courts to consider only what necessarily appears in plaintiff's statement of his claim); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S.

470, 475 (1998) (whether the claim "arises under" federal law for removal purposes is determined by the same "well-pleaded complaint rule" that determines original federal question jurisdiction).  Accordingly, this is an action of a civil nature in which the district courts of the United States have been conferred original jurisdiction in that it arises under the laws of the United States as provided in 28 U.S.C. § 1331.

11.   Pursuant to 28 U.S.C. §§ 1367(a) and 1441(c), this Court has supplemental jurisdiction over Plaintiff's additional causes of action under California Law as they all arise from the same nucleus of operative facts (*i.e.*, the same transactions or occurrences), namely, Plaintiff's employment with Rocket Mortgage. Plaintiff's state law wage and hour claims also form part of the same case or controversy as Plaintiff's wage and hour claims under the FLSA, for which this Court has original jurisdiction. *See, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that, absent unusual circumstances, where claims based on federal law have a "common nucleus of operative fact" with those alleged under state law, federal courts should exercise supplemental jurisdiction over the state law claims); *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1070 (9th Cir. 2019) (district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [] original jurisdiction that they form part of the same case or controversy"); *see also Sea-Land Serv., Inc. v. Lozen Int'l*, 285 F.3d 808, 814 (9th Cir. 2002) ("Because the federal and state counterclaims arise from the same transaction and rely on identical facts for their resolution, they 'form part of the same case or controversy under Article III' for the purposes of supplemental jurisdiction [under 28 U.S.C. § 1367(a)]."); *Navarro v. City of Fontana*, Case No. EDCV 09-1525-VAP (DTBx), 2010 U.S. Dist. LEXIS 147141 at *5-6 (C.D. Cal. Jan. 6, 2010) ("It would be inefficient to require the California Superior Court to duplicate the work of this Court by becoming familiar with these same facts. Furthermore, the existence of two separate actions relating to the same nucleus of facts would present a risk of inconsistent rulings. Additionally, it would be inconvenient to all parties to be forced to litigate two separate actions relating to the same nucleus of facts.").

**REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT[2]**

12.     Removal of this action further is proper under CAFA, 28 U.S.C. §§ 1332, *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

13.     In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

14.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from at least one of the Defendants.  28 U.S.C. §§ 1332(d) and 1453.[3]

**A.     The Putative Class Contains More Than 100 Members.**

15.     CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

---

[2]     Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or any putative class members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief.  Defendant also denies that this action can proceed as a class or collective action and denies that Plaintiff can represent any putative class members.  Notwithstanding the above, removal of this action pursuant to CAFA is proper given that removal is based on the allegations and class definition set forth by Plaintiff in the Complaint.

[3]     Rocket Mortgage does not need the consent of the other defendants to properly remove this action under CAFA. *See* 28 U.S.C. § 1453(b).  Nevertheless, Defendants Rocket Companies, Inc., Quicken Loans, Inc., and Quicken Loans, LLC all consent to this removal.  Gitig Decl. at ¶¶ 8 and 9.

16.     Here, Plaintiff's Complaint asserts that the Putative Class "consists of at least 100 individuals" (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between April 29, 2018 and the present is referred to herein as the "Putative Class Period"). Complaint at ¶ 14(a).   Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.     None Of The Named Defendants Are Government Entities.**

17.     None of the named Defendants are a State, a State official, or any other governmental entity.

**C.     Minimal Diversity Is Satisfied Under CAFA.**

18.     The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.   28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant.").

19.     Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

20.     For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).   "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).   While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise").

21.     Defendant is informed and believes, as alleged by Plaintiff in the Complaint, that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. Complaint at ¶¶ 1-3.

22.     For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-cv-2852-BEN-MSB, 2019 U.S. Dist. LEXIS 112995 at *4-5 (S.D. Cal. July 1, 2019). CAFA states that "for purposes of this subsection and [28 U.S.C. § 1453], an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). This is different from section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage*, 437 F.3d 894, 899 (9th Cir. 2006).

23.     With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,* 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

24.     At the time Plaintiff filed the Complaint and presently, Rocket Mortgage has been a limited liability company organized under the laws of the State of Michigan. At all relevant times, Rocket Mortgage's company headquarters – and thus its principal place of business – has been in the State of Michigan where the majority of its executive, administrative, financial and management functions are conducted, and from where the majority of its high-level officers direct, control, and coordinate and control the company's operations and activities. Most members of Rocket Mortgage's executive team maintain their

USDC CASE NUMBER                    8                    NOTICE OF REMOVAL OF
                                                         ACTION TO THE UNITED
                                                         STATES DISTRICT COURT

offices in the State of Michigan, while none of its executive officers reside in the State of California. Accordingly, for purposes of removal under CAFA, Rocket Mortgage is citizen of the State of Michigan and is not a citizen of the State of California.[4]

25.    Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while at least one Defendant (Rocket Mortgage) was – and still is – a citizen of the States of Michigan and Delaware.[5] 28 U.S.C. § 1332(d)(2).

**D.    The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.**

26.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43.

27.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"). Moreover, the argument

[4]    Alternatively, Rocket Mortgage is a citizen of the States of Delaware and Michigan based on the states in which its sole member is a citizen.
[5]    The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. 28 U.S.C. § 1441(a); *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

1   and facts set forth herein may appropriately be considered in determining whether the
2   jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843,
3   n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

4       28.   Notably, "[t]here is no obligation by defendant to support removal with
5   production of extensive business records to prove or disprove liability and/or damages with
6   respect to plaintiff or the putative class members at this premature (pre-certification) stage
7   of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 U.S.
8   Dist. LEXIS 31515 at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal
9   must prove by a preponderance of the evidence the aggregate amount in controversy exceeds
10  the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993-94
11  (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its
12  analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant
13  was only required to show the amount in controversy by a preponderance of evidence);
14  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper
15  burden of proof imposed upon a defendant to establish the amount in controversy is the
16  preponderance of the evidence standard"); *see Lewis v. Verizon Communs., Inc.*, 627 F.3d
17  395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total
18  amount in dispute, not a prospective assessment of defendant's liability").

19      29.   In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United
20  States Supreme Court held that, whereas here, the complaint is silent as to whether the
21  amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's
22  notice of removal need include only a *plausible* allegation that the amount in controversy
23  exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added).
24  Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal
25  need not contain evidentiary submissions but only plausible allegations of the jurisdictional
26  elements," and further that "when a defendant's allegations of removal jurisdiction are
27  challenged, the defendant's showing on the amount in controversy may rely on reasonable
28  assumptions," which need not be proven. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959,

---

USDC CASE NUMBER          10         NOTICE OF REMOVAL OF
ACTION TO THE UNITED
STATES DISTRICT COURT

963 (9th Cir. 2020) (citations and internal quotation marks omitted); *see also Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (defendant may rely on reasonable assumptions in estimating amount in controversy, which "need not be proven"). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, No. 14-cv-05550-MEJ, 2015 U.S. Dist. LEXIS 11338 at *5-6 (N.D. Cal. Jan. 29, 2015) (*quoting Dart*, 135 S. Ct. at 554). On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1182-84 (9th Cir. 2015).

30.     Moreover, if a plaintiff asserts statutory violations, the Court must assume that the violation rate is 100%, unless the plaintiff specifically alleges otherwise. *See Muniz*, *supra*, 2007 U.S. Dist. LEXIS 31515 at *12-13 ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464 at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

/ / /

/ / /

/ / /

USDC CASE NUMBER          11          NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

31.     In the alternative, and without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[6] also conservatively places an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, as follows:

a.     <u>Failure to Pay Minimum Wages and Liquidated Damages (First and Eighth Causes of Action)</u>: Plaintiff seeks to recover "all unpaid minimum time wages and liquidated damages thereon, plus attorney's fees," because he and the Putative Class Members were allegedly not paid for all hours worked due to, amongst other things, Defendants' alleged "automatic deduction policies and practices for meal periods [], failure to relieve employees of all duties and employer control during unpaid meal periods or otherwise unlawful meal period practices, time-rounding policies and practices, payment according to scheduled hours worked instead of actual time worked, and mandated pre-shift/post-shit [sic] and/or other mandated off-the-clock work policies and practices." Complaint at ¶¶ 17, 59, 66, 122, 125. For instance, Plaintiff claims that he and Putative Class Members were required to "start and/or boot all of Defendants' computer systems, phone systems, and/or software so as to have all systems running at the start of the scheduled shift start time" and that he allegedly "spent at least 10-15 minutes before each scheduled shift preparing approximately six different work applications in order to clock in and begin his shift." Id. at ¶ 19.  Thus, based on the time he claims to have spent waiting for systems to boot alone, Plaintiff was allegedly not compensated for approximately one hour of work per week (10-15 minutes x 5 days per week). Id. at ¶ 16.  Moreover, Plaintiff alleges he "performed approximately 6 hours of off-the-clock work each month," which equates to roughly 1.4 hours per week (6 hours ÷ 4.3 weeks per month). Id. at ¶ 20.  Thus, based on the allegations in the Complaint, and because Plaintiff

---

[6]     For purposes of calculating the potential amount in controversy in this removal, Defendant conservatively assumed, based on a review of internal records, that the Putative Class consisted of at least 100 individuals who collectively worked at least 20,000 during the Putative Class Period.  *See, e.g.*, *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

alleges his injuries are typical of the Putative Class Members, it is plausible that Plaintiff is seeking to recover at least 2.4 hours of minimum wage per week for all Putative Class Members. This would plausibly place over **$1,056,000** in controversy with respect to Plaintiff's minimum wage claim ([$11.00 minimum hourly wage rate[7] x 2.4 hours per week x 20,000 workweeks] plus an equal amount in liquidated damages).

    b. <u>Failure to Pay Overtime Wages (Second and Eighth Causes of Action)</u>: Plaintiff's overtime claims allege similar factual allegations with respect to his minimum wage claim. *See* Complaint at ¶¶ 17-28 ("Unpaid Minimum and Overtime Wages") (emphasis in original); Id. at ¶¶ 69, 122-126. Plaintiff also alleges that, "at times Defendants paid Plaintiff and Class Members a base hourly rate that fell below California's minimum wage standard, which in turn resulted in the underpayment of overtime wages." Id. at ¶ 69. Given these purported violations, Plaintiff claims he and Putative Class Members are entitled to recover overtime wages "equal to one and one-half times the employee's regular rate of pay for all hours worked in excess of eight (8) hours in any workday, and for the first eight (8) hours worked on the seventh consecutive day of work in a workweek, and they must be paid double the regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) on the seventh consecutive day of work in a workweek," and "overtime at a rate of no less than one and one- half times the regular rate of pay for work performed in excess of forty hours in a workweek." Id. at ¶¶ 68, 121. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least 2.4 hours of overtime wages per week for all Putative Class Members, which would place over **$792,000** in controversy in connection with his overtime claim ($16.50 overtime rate [$11.00 average hourly rate x 1.5] x 2.4 hours per week x 20,000 workweeks).

---

[7]  For purposes of calculating potential amounts in controversy in this Notice of Removal, Rocket Mortgage conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11.00 per hour). *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

c.      <u>Failure to Provide Meal Periods (Third Cause of Action)</u>: Plaintiff contends he and Putative Class Members "consistently worked shifts of at least five and one-half hours or more, entitling them to at least one meal period."  Complaint at ¶ 29. Plaintiff further alleges "Defendants had a uniform policy and/or practice of requiring Plaintiff and other [Putative] Class Members to always be responsive to work-related calls and/or clients during their shifts, including but not limited to during unpaid meal breaks," and "failed to provide Plaintiff and the [Putative] Class Members with all required meal periods, or with proper compensation in lieu thereof." Id. at ¶¶ 30, 81. Moreover, the Complaint alleges "per Defendants' uniform policy and practice," Plaintiff and Putative Class Members did not receive a timely, uninterrupted second meal period when working shifts over ten hours in a workday, and Defendants did not pay Plaintiff and Putative Class Members an additional hour of wages at their respective regular rates of pay for each workday a proper meal period was not provided. Id. at ¶¶ 34, 38, 78-79.  Plaintiff further contends he personally "rarely took an off-duty meal period at all," and when "[he] worked more than ten hours in a shift, Plaintiff was not provided with a second meal period." Id. at ¶¶ 29, 34. Given these purported violations, Plaintiff claims he and the Putative Class Members are entitled to one additional hour's pay at the employee's regular rate of compensation for each day a meal period was missed, late or interrupted.  Id. at ¶ 82. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover meal period premiums based on a 100% violation rate for all Putative Class Members, which would place **$1,100,000** in controversy in connection with his meal period claim ($11.00 hourly rate x 5 meal periods penalties per week x 20,000 workweeks).

d.      <u>Failure to Provide Rest Periods (Fourth Cause of Action)</u>: Plaintiff contends that Defendants "did not properly authorize or permit Plaintiff and [Putative] Class Members to take compliant rest periods at a rate of every four (4) hours worked or major fraction thereof," and "[a]ny purported rest periods were consistently interrupted, cut short, on duty, and/or late." Complaint at ¶¶ 39, 41. Moreover, Plaintiff contends "Defendants never paid Plaintiff and [Putative] Class Members an additional hour of wages at their

---

USDC CASE NUMBER                         14              NOTICE OF REMOVAL OF
                                                         ACTION TO THE UNITED
                                                         STATES DISTRICT COURT

regular rate(s) of pay for each workday they were denied a compliant rest period." Id. at ¶ 43. Plaintiff alleges he personally "rarely, if ever, took an off duty/uninterrupted ten-minute rest period during his employment by Defendants." Id. at ¶ 42. Given these purported violations, Plaintiff claims he and Putative Class Members are entitled to recover rest period violations for "one hour of additional pay at the regular rate of compensation for each workday that the rest period was not provided." Id. at ¶ 87. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover rest period penalties based on a 100% violation rate for all Putative Class Members, which would place **$1,100,000** in controversy in connection with his rest period claim ($11.00 average hourly rate x 5 rest periods penalties per week x 20,000 workweeks).

        e.    <u>Failure to Furnish Accurate Itemized Wage Statements (Fifth Cause of Action)</u>: For Plaintiff's fifth cause of action, Plaintiff asserts Defendants derivatively failed and continue to fail to provide Plaintiff and Putative Class Members with an accurate itemized wage statements for all wages in writing showing: "(a) the gross wages earned, in violation of Labor Code section 226(a)(1); (b) the total hours worked by the employee in violation of Labor Code section 226(a)(2); (c) the net wages earned, in violation of Labor Code section 226(a)(5); and (d) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Complaint at ¶ 90. As a result of these violations, Plaintiff claims Putative Class Members are entitled "to recover fifty dollars per employee for the initial pay period in which a Section 226 violation occurred and one hundred dollars per employee per violation for each subsequent pay period, not to exceed an aggregate penalty of four thousand dollars per employee." Id. at ¶ 99. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$102,500** in controversy in connection with his wage statement claims ($50 per first wage statement x 50 Putative Class Members who worked between April 29, 2021 and June 3, 2022 plus $100 per each subsequent wage statement x 1,000 pay periods worked by Putative Class Members between April 29, 2021 and June 3, 2022, up to a maximum of $4,000 per Putative Class Member). *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l*

---

USDC CASE NUMBER                    15              NOTICE OF REMOVAL OF
                                                    ACTION TO THE UNITED
                                                    STATES DISTRICT COURT

*Med. Ctr.,* No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574 at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas*, *supra*, 2018 U.S. Dist. LEXIS 78510 at *25 (noting "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

        f.   <u>Failure to Timely Pay Final Wages (Sixth Cause of Action)</u>: For Plaintiff's sixth cause of action, Plaintiff asserts Defendants derivatively "fail[ed] to timely pay final wages to [Putative] Class Members upon separation of employment in violation of Labor Code section[s] 201-202 and/or fail to timely provide final wages with all owed vacation pay and/or paid time off. . . [and] untimely provide final wages to Class Members without regard to the [seventy-two hours] timing requirements of Labor Code sections 201-202." Complaint at ¶ 105. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over **$132,000** in controversy in connection with his claims for waiting time penalties (50 Putative Class Members who have separated from their employment with Defendant x $11.00 hourly rate x 8 hours x 30 days).[8]

        g.   <u>Failure to Reimburse Business Expenses (Seventh Cause of Action)</u>: Plaintiff alleges Putative Class Members were and are required by Defendants to personally incur necessary expenditures in direct consequence of the discharge of their duties, including

---

[8]    Plaintiff's second cause of action asserts that Defendants failed to pay overtime wages at the legal overtime pay rate, and Plaintiff's third and fourth causes of action contend Defendants failed to pay meal and rest period premiums at the legal pay rate. Complaint at ¶¶ 28, 38, 70, 80, 82, 86-87, 121, 123. Based on a plausible reading of the Complaint, Plaintiff is seeking to recover waiting time penalties for any Putative Class Member who was subjected to any of the alleged violations set forth in the Complaint's second through fourth causes of action and separated from their employment with Defendants during the applicable statute of limitations period.

but not limited to "costs associated with using a personal cell phone/data plan usage and charges incurred as a result of being required to use a personal cell phones/other mobile communication devices for work related purposes, and costs associated with using home internet services for work related purposes," and that "Defendants fail[ed] to provide Plaintiff and [Putative] Class Members with full reimbursement for all reasonable expenses associated with carrying out their duties." Complaint at ¶¶ 53, 111-12. Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover an average of at least $20.00 per week for all Putative Class Members, which would place **$400,000** in controversy in connection with his expense reimbursement claim ($20.00 per week x 20,000 workweeks).

32.   Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class and collective claims, which the Court must consider and include in the amount in controversy. Complaint at pgs. 31-32, Prayer for Relief. *Solorzano v. Alsco Inc*., 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g.*, *McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas*, *supra*, 2018 U.S. Dist.

LEXIS 78510 at *32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy."); *Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Solorzano*, *supra*, 2021 U.S. Dist. LEXIS 129517 at *3-4 (demonstrating courts regularly adopting a $300 per hour rate for attorneys' fees in employment actions).

33.     "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275 at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729 at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856 at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975 at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

34.     The Court should therefore consider attorneys' fees of at least **$1,170,625**, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 31 above. *See, e.g.*, *Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672 at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

35.     Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (over **$5,853,125**[9]) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## <u>NOTICE TO ALL PARTIES AND STATE COURT</u>

36.     In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## <u>CONCLUSION</u>

37.     Based on the foregoing, Defendant hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on federal question jurisdiction (28 U.S.C. §§ 1331, 1441, and 1446) and CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.


Dated:  June 3, 2022                          JACKSON LEWIS P.C.

                                    By:      _____*/s/ Eric J. Gitig*_____
                                             Chad D. Bernard
                                             Eric J. Gitig
                                             Martin Vigodnier

                                             Attorneys for Defendant
                                             ROCKET MORTGAGE, LLC
                                             (formerly known and doing business as
                                             Quicken Loans, Inc. and Quicken Loans,
                                             LLC); and ROCKET COMPANIES, INC.

4882-4548-7651, v. 1

---

[9]     This amount does include potential damages for Plaintiff's second through fourth causes of action (failure to pay overtime wages at the legal pay rate and failure to pay premium wages at the legal pay rate for meal and rest periods), which would further increase the amount in controversy in connection with Plaintiff's putative class claims.